# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| THE STATE OF TENNESSEE; THE STATE OF INDIANA; THE STATE OF ALABAMA; THE STATE OF ALASKA; THE STATE OF ARIZONA; THE STATE OF ARKANSAS; THE STATE OF GEORGIA; THE STATE OF KANSAS; THE COMMONWEALTH OF KENTUCKY; THE STATE OF LOUISIANA; THE STATE OF MISSISSIPPI; THE STATE OF MISSOURI; THE STATE OF MONTANA; THE STATE OF NEBRASKA; THE STATE OF OHIO; THE STATE OF OKLAHOMA; THE STATE OF SOUTH CAROLINA; THE STATE OF SOUTH DAKOTA; THE STATE OF TEXAS; THE STATE OF UTAH; THE COMMONWEALTH OF VIRGINIA; THE STATE OF WEST VIRGINIA, </br></br>    Plaintiff, </br></br> v. </br></br> UNITED STATES DEPARTMENT OF AGRICULTURE; THOMAS VILSACK, in his official capacity as Secretary of Agriculture; CINDY LONG, in her official capacity as Administrator of Food and Nutrition Service at the United States Department of Agriculture; ROBERTO CONTRERAS, in his official capacity as Director of the Food and Nutrition Service Civil Rights Division at the United States Department of Agriculture, </br></br>    Defendants. | Case No. _____ |

**DECLARATION OF N. ANTONIO NIKNEJAD**

1

Pursuant to 28 U.S.C. § 1746, I, N. Antonio Niknejad duly affirm under penalty of perjury as follows:

1. I am over 18 years of age, have personal knowledge of the matters set forth herein, and am competent to make this Declaration.

2. I serve as the Policy Director to Bill Lee, Governor of the State of Tennessee. In this role, I serve as a member of the Governor's cabinet and am responsible for leading the development of the Governor's policy agenda, which includes social services, spending, the State's response to federal policies, and the State's other interactions with the federal government, including federal funding programs.

3. I have reviewed the various memoranda and proposed final rule issued by the U.S. Department of Agriculture ("Department"), including: USDA, CRD 01-2022, Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update (May 5, 2022), https://bit.ly/3NuXnSx ("Memorandum"); USDA, Cover Letter to CRD 01-2022, Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update (May 5, 2022) ("Cover Letter"); USDA, CRD 02-2022, Questions and Answers Related to CRD 01-2022 Application of *Bostock v. Clayton County* to Program Discrimination Complaint Processing – Policy Update (May 5. 2022), https://bit.ly/3yzKpyG ("Memorandum Q&A"); USDA, Memorandum Regarding Revised Nondiscrimination Statement and "And Justice for All" Posters; Timelines and Guidance for Implementation (May 5, 2022) ("Supplemental Memorandum") (collectively "Memoranda"); and Supplemental Nutrition Assistance Program: Civil Rights Update to the Federal-State Agreement, 87 Fed. Reg. 35,855 (June 14, 2022), https://bit.ly/3bDC4RA ("Final Rule").

4. The State of Tennessee, through its agencies and its political subdivisions, engages in various agreements with the federal government to administer the Supplemental Nutrition Assistance Program ("SNAP").

5. In Fiscal Year 2020-21, Tennessee received approximately $2,600,264,708 in federal funding from the Department to administer the SNAP programs and distribute SNAP benefits in Tennessee. This includes approximately $102,192,555 for SNAP administration and $2,498,072,153 for SNAP benefits.

6. SNAP benefits hundreds of thousands of Tennesseans by providing vital nutritional assistance to some of our most vulnerable citizens. Over the past year, the average number of Tennessee households per month to receive benefits through SNAP was 424,151.

7. The State of Tennessee works with approximately sixty-two (62) partners in executing SNAP programs. This includes direct recipients and subrecipients funded through agreements with the Tennessee Department of Human Services and the Tennessee Department of Labor.

8. SNAP remains an important program to Tennessee because it provides temporary support and needed nutrition benefits to supplement the food budget of low-income Tennessee families so that they can purchase healthy food to remain healthy and to become self-sufficient. The primary goals of the SNAP program are to alleviate hunger and to improve nutrition and health in eligible households.

9. The State of Tennessee expects to continue in its cooperative-federalist agreements with the Department to maintain and administer SNAP programs and SNAP benefits for Tennesseans.

10. For example, the State of Tennessee has been preparing to resubmit the 2023 SNAP Nutrition Education (SNAP-ED) Comprehensive State Plan by the required deadline of August 15, 2022. SNAP-ED facilitates the SNAP nutrition education and information delivery to low-income SNAP recipient families in multiple community settings such as farmers markets, schools, community centers, and parks, with the purpose of assuring maximum exposure to nutrition information and increasing the likelihood that SNAP recipients improve their well-being through making health food choices and physical activity.

11. In Tennessee, the University of Tennessee Extension: Tennessee Nutrition and Consumer Education Program and the Tennessee State University SNAP-ED Community Nutrition Education Delivery program facilitate the SNAP-ED program. In Fiscal Year 2022, the Department allocated $6,049,977.00 for SNAP-ED.

12. However, given the Proposed Rule and Memoranda, Tennessee must adopt the Department's revised nondiscrimination statement in the coming days or risk losing its federal funding. *See* Technical Assistance & Guidance, FNS Nondiscrimination Statement (May 5, 2022), https://bit.ly/3nZTc6W ("Nondiscrimination Statement").

13. The Proposed Rule and Memoranda arguably conflict with Tennessee's laws. *See, e.g.*, Tenn. Code Ann. § 49-6-310 (providing that "[a] student's gender for purposes of participation in a public middle school or high school interscholastic athletic activity or event must be determined by the student's sex at the time of the student's birth"); *id.* § 49-2-805 (giving public school students, teachers, and employees a private right of action against a school that "intentionally allow[s] a member of the opposite sex to enter [a] multi-occupancy restroom or changing facility while other persons [are] present"); *id.* § 49-6-2904(b)(2) (providing students a right to "[e]xpress religious viewpoints in a public school"); *id.* § 49-7-2405(a)(2), (a)(10)

4

(providing, with certain limitations, that public higher educational institutions in Tennessee "shall be committed to giving students the broadest possible latitude to speak, write, listen, challenge, learn, and discuss any issue" and that "no faculty will face adverse employment action for classroom speech").

14. The State of Tennessee would also incur various compliance costs if forced to comply with the requirements of the Memoranda and Final Rule.

15. The State of Tennessee also plans to continue its management of the SNAP program for households and beneficiaries.

16. As a result, Tennessee must choose between its sovereignty in enforcing its own laws or risk losing federal funding that benefits hundreds of thousands of families and children who need nutrition assistance.

_____  _____
N. Antonio Niknejad                    Date: 07/25/22